Law Division Motion Section Initial Case Management Dates for CALENDARS (A,B,C,D,E,F,H,R,X,Z) will be heard in person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt,org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: 5/7/2026 9:30 AM

FILED
3/13/2026 11:56 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026L002909
Calendar, S
37093583

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| I.Q. TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. **2026L002909** |
| | ) | |
| GEORGE INDUSTRIES, LLC, | ) | |
| ALEXANDER MACHINE & TOOL | ) | |
| COMPANY, LLC, and THE THERMAL | ) | For updated information about your case, including hearings, subsequent filings and other case information, please visit our Online Case Search and search for your case: https://casesearch.cookcountyclerkofcourt.org |
| GROUP, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT AND JURY DEMAND**

Plaintiff, I.Q. TECHNOLOGIES, INC. ("IQT") for its Complaint against Defendants

GEORGE INDUSTRIES, LLC ("GI"), ALEXANDER MACHINE & TOOL COMPANY, LLC

("AMT") and THE THERMAL GROUP, LLC ("TTG") (collectively the "Defendants"), alleges

and states as follows:

**INTRODUCTION AND NATURE OF THE ACTION**

1. This is an action for breach of contract due to Defendants' repeated and continued

failure to perform their respective obligations and make required payments under a Managed

Services Agreement (attached as **Exhibit 1**) ("MSA"), Infrastructure as a Service Agreement

(attached as **Exhibit 2**) ("IaaS Agreement") and related agreements and statements of work

(collectively the "Contracts"), and violations of the terms and conditions thereof.[1]

---

[1] The MSA contains a confidentiality provision in which the parties "acknowledge[d] that all information transmitted in connection with performance of the Services, which is proprietary to the disclosing party or otherwise clearly marked as confidential, constitutes confidential information ('Confidential Information')." ¶ 9. The parties agreed to "maintain the Confidential Information of the other party during and up to 24 months after the termination of this [MSA], and in confidence and, except as provided herein, will not . . . otherwise make it available to third parties." *Id.* Accordingly, certain portions of this Complaint have been redacted because they contain information designated as confidential under the parties' Contracts. The redacted material, as well as the referenced confidential Contract exhibits, will be made available in unredacted form to Defendants and, upon request, to the Court for *in camera* inspection.

1

2. Despite IQT's performance, Defendants have failed and refused to make required payments owed under the Contracts. Defendants' conduct and refusal to pay amounts due and owing to IQT violates their contractual obligations to IQT and, as a result, IQT has been damaged and now seeks monetary relief, including attorneys' fees and costs

3. In addition, Defendants separately requested, directed and accepted additional services from IQT that were outside the scope of the Contracts. IQT performed that additional work in good faith and at Defendants' request, conferring substantial benefits upon Defendants. Defendants knowingly accepted and retained those benefits but have refused to compensate IQT for the reasonable value of the services provided. As a result, Defendants have breached the Contracts and been unjustly enriched at Plaintiff's expense

## PARTIES, JURISDICTION, AND VENUE

4. IQT is an Illinois corporation with its principal place of business in Chicago, Illinois.

5. GI is a New York limited liability company with its principal place of business in Endicott, New York.

6. AMT is Massachusetts limited liability company with its principal place of business in Woburn, Massachusetts.

7. TTG is a New York limited liability company with its principal place of business in Endicott, New York.

8. Jurisdiction and venue are proper in this Court because Defendants consented to venue in this Court in the IaaS Agreement (**Exhibit 2**, ¶ 21(d)) ("The Parties consent exclusively and irrevocably to the jurisdiction and venue of any competent court in the State of Illinois for any

2

legal action arising under this Agreement . . . ."), and because IQT is located and does business in Cook County.

9.      In addition, jurisdiction is proper in this Court pursuant to 735 ILCS 5/2-209(a)(7) because Defendants entered into a contract with IQT to be performed in Illinois, and venue is proper in this Court pursuant to 735 ILCS 5/2-101.

10.     Defendants agreed that the Contracts "shall be governed by the laws of the state of Illinois without regard to its choice of law provisions."  **Exhibit 1**, ¶ 18(d); *see also* **Exhibit 2**, ¶ 21(d) ("This Agreement shall be governed by and construed in accordance with the laws of State of Illinois without reference o application of conflict of law rules.")

## FACTS COMMON TO ALL COUNTS

11.     IQT is a leading information technology ("IT") solutions provider located in Chicago that provides customized IT management and a full range of IT services to its clients.

12.     Since March 2024, IQT has provided managed IT, hosting, infrastructure, migration, security, licensing and professional services to Defendants pursuant to the MSA and related Contracts.

### A.      MANAGED SERVICES AGREEMENT

13.     On or about March 1, 2024, GI entered into a Managed Services Agreement with IQT for services and equipment for Virtual Server Hosting, Virtual Server Management, User Management, Network Printer Management, Email System Management, Proofpoint Management, Preventative Maintenance (System Patching), Data Backup Services, Virtual I.T. Director Service, Hosted Wireless Service, Internet Service, VPN as a Service, Remote Technical Support. A true and correct copy of Managed Services Agreement, hereinafter "MSA", is attached hereto as **Exhibit 1** and incorporated herein.

3



FILED DATE: 3/13/2026 11:56 AM   2026L002909



19.

20.

21.

22.

23.

5

24. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

### B. IaaS Agreement

27. On or about February 13, 2025, GI, AMT and TTG entered into an Infrastructure as a Service Agreement with IQT. A true and correct copy of the Infrastructure as a Service Agreement, hereinafter IaaS Agreement, is attached hereto as **Exhibit 2** and incorporated herein.

28. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

FILED DATE: 3/13/2026 11:56 AM   2026L002909



29.

30.

31.

32.

33.

34.

35.

36.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

37.     ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

### C.     GI MICROSOFT AND CROWDSTRIKE SUBLICENSE AGREEMENTS

38.     On or about May 20, 2025, GI entered into a Sublicense Agreement with IQT to provide licensing for Microsoft server products and proprietary software and to operate such software on GI's computer systems and devices. A true and correct copy of the Sublicense Agreement for Microsoft, hereinafter the "Microsoft Sublicense Agreement" is attached as **Exhibit 3**.

39.     ████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████

40.     ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

41.     ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████

### D.      BACKUP AS A SERVICE AGREEMENTS

42.      On or about March 7, 2025, GI entered into a Backup as a Service Agreement with IQT.  A true and correct copy of the Backup as a Service Agreement GI entered into with IQT, hereinafter "BaaS-GI Agreement", is attached hereto as **Exhibit 5** and incorporated herein.

43.      On or about March 7, 2025, AMT entered into a Backup as a Service Agreement with IQT.  A true and correct copy of the Backup as a Service Agreement AMT entered into with IQT, hereinafter "BaaS-AMT Agreement", is attached hereto as **Exhibit 6** and incorporated herein.

44.      

45.      

46.      

47.      

9



48.

49.

50.

51.

Defendants have failed and refuse to make required payments for amounts due ████████████████████████████████ under the terms of the BaaS Agreements in violation of the parties' contracts.

52. Defendants have also failed to make required payments for amounts due to IQT under the BaaS Agreements for expanded backup services provided by IQT for out-of-scope backup workloads as a result of the additional virtual machines added by Defendants.

### E. WIRELESS AS A SERVICE AGREEMENTS

53. On or about March 7, 2025, GI entered into a Wireless as a Service Agreement with IQT. A true and correct copy of the Wireless as a Service Agreement GI entered into with IQT, hereinafter "WaaS-GI Agreement", is attached hereto as **Exhibit 7** and incorporated herein.

54. On or about March 7, 2025, AMT entered into a Wireless as a Service Agreement with IQT. A true and correct copy of the Wireless as a Service Agreement AMT entered into with IQT, hereinafter "WaaS-AMT Agreement", is attached hereto as **Exhibit 8** and incorporated herein.

10



FILED DATE: 3/13/2026 11:56 AM   2026L002909

11

63. ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████

64. IQT performed all obligations under the WaaS Agreements.

65. Defendants have failed to pay for amounts due to IQT for work performed under the WaaS Agreements in violation of the parties' contracts.

## F. NETWORK INFRASTRUCTURE UPGRADE PROJECT SOWS

66. On November 12, 2024, IQT and GI entered into a Network Infrastructure Upgrade Project Statement of Work. A true and correct copy of the Network Infrastructure Upgrade Project Statement of Work GI entered into with IQT, hereinafter "GI Network Infrastructure Upgrade SOW," is attached hereto as **Exhibit 9** and incorporated herein.

67. On December 4, 2024, IQT and AMT entered into a Network Infrastructure Upgrade Project Statement of Work. A true and correct copy of the Network Infrastructure Upgrade Project Statement of Work AMT entered into with IQT, hereinafter "AMT Network Infrastructure Upgrade SOW", is attached hereto as **Exhibit 10** and incorporated herein.

68. ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████

12

FILED DATE: 3/13/2026 11:56 AM   2026L002909



69.

70.

71.

72.

73.

74.

75.

76.

13

FILED DATE: 3/13/2026 11:56 AM   2026L002909



83.     GI and AMT have failed to compensate IQT for the additional work IQT performed

in violation of the Network Infrastructure Upgrade SOWs

84.     Despite IQT's performance,  GI and AMT have failed and refuse to make required payments to IQT under the Network Infrastructure Upgrade SOWs for all amounts due to IQT for work performed as required by the agreements.

85.     In addition, AMT and GI have failed and refuse to make required payments to IQT the monthly maintenance fee

14

## G. WIRELESS SYSTEM UPGRADE PROJECT SOWS

86. On or about March 7, 2025, GI entered into a Wireless System Upgrade Project Statement of Work. A true and correct copy of the Wireless System Upgrade Project Statement of Work GI entered into with IQT, hereinafter "GI Wireless Upgrade SOW," is attached hereto as **Exhibit 11** and incorporated herein.

87. On March 7, 2025, IQT and AMT entered into Wireless System Upgrade Project Statement of Work. A true and correct copy of the Wireless System Upgrade Project Statement of Work AMT entered into with IQT, hereinafter "AMT Wireless Upgrade SOW," is attached hereto as **Exhibit 12** and incorporated herein.

88. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

89. ████████████████████████████████████████████████████████████████████████████████

90. ████████████████████████████████████████████████████████████████████████████

91. ████████████████████████████████████████████████████████████████████████████████████████████

15

FILED DATE: 3/13/2026 11:56 AM   2026L002909

92.

93.

94.

95.

96.

97.

98.



16

FILED DATE: 3/13/2026 11:56 AM  2026L002909

99.



100.

101.

102.

103.

104. IQT performed substantial work, ███████████ and invested significant resources for project deployment under the Wireless Upgrade SOWs.

105. However, GI and AMT have failed to pay IQT for all amounts due to IQT for work performed as required by the Wireless Upgrade SOWs.

### H. DUO, PROOFPOINT & EMAIL ARCHIVING PROJECT SOWS

106. On or about July 15, 2025, GI entered into a DUO, Proofpoint & Email Archiving Project SOW. A true and correct copy of the DUO, Proofpoint & Email Archiving Project SOW GI entered into with IQT, hereinafter "GI DUO SOW," is attached hereto as **Exhibit 13** and incorporated herein.

107. On July 16, 2025, AMT entered into a DUO, Proofpoint & Email Archiving Project SOW. A true and correct copy of the DUO, Proofpoint & Email Archiving Project SOW AMT

17

entered into with IQT, hereinafter "AMT DUO SOW," is attached hereto as **Exhibit 14** and incorporated herein.



███████████████████████████████████████████████████

████████

115.    ████████████████████████████████████████████████

██████████████████████████████████

116.    IQT completed its deliverables for those Users whom GI and AMT identified and coordinated as required under the DUO SOWs.

117.    IQT performed substantial work and invested significant resources for project deployment under the DUO SOWs.

118.    GI and AMT have failed to make required payments to IQT for all amounts due to IQT for work performed as required by the DUO SOWs.

I.    MEDIUS PROJECT STATEMENT OF WORK

119.    On or about July 1, 2025, AMT and IQT entered into a Medius Project Statement of Work. A true and correct copy of the Medius Project Statement of Work AMT entered into with IQT, hereinafter "Medius SOW," is attached hereto as **Exhibit 15** and incorporated herein.

120.    ████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████

121.    ████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████

122.    ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████

FILED DATE: 3/13/2026 11:56 AM   2026L002909

123.



124.

125.

126.

127.

128.

129.

130.

FILED DATE: 3/13/2026 11:56 AM   2026L002909

131.    AMT has failed to pay IQT for all amounts due to IQT for work performed as required by the Medius SOW.

### J.    GI CABLING PROJECT

132.

133.

134.

135.

136.

137.

138.

21

FILED DATE: 3/13/2026 11:56 AM   2026L002909



139.

140.

141.

142.

143.

144.

145.

146.

147.



152. In total, IQT provided extensive professional services in connection with the GI Cabling Project, ████████████████████████████████████████████████

███████████████████████████████████████████████████████

153. All work IQT performed for the GI Cabling Project was done at GI's direction, for GI's benefit, and with GI's full knowledge and participation.

154. To date, GI has failed to pay IQT for the professional services IQT performed in connection with the GI Cabling Project.

## K. AMT CABLING PROJECT

155. ████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

FILED DATE: 3/13/2026 11:56 AM   2026L002909



160.     In total, IQT provided extensive professional services in connection with the AMT Cabling Project,

161.

162.     All work IQT performed for the AMT Cabling Project was done at AMT's direction, for AMT's benefit, and with AMT's full knowledge and participation.

163.     To date, AMT has failed to pay IQT for the professional services IQT performed in connection with the AMT Cabling Project.

FILED DATE: 3/13/2026 11:56 AM   2026L002909

**L.    POWER BI HOSTING, SERVER AND REPORTING WORK**



164.

165.

166.

167.

168.

169.

170.

171.

25

FILED DATE: 3/13/2026 11:56 AM   2026L002909



172.

173.

174.

175.

176.

177.

178.

179.

180.

181.

182. Defendants derived substantial benefits from the above services and professional work IQT performed relating to:

183. Defendants have retained these benefits without payment, despite knowing IQT expected to be compensated for its services.

## M. ERP SUPPORT SERVICES

184. GI engaged IQT to handle GI's internal ERP system

185. ERP-related services are outside the scope of the MSA.

186. IQT performed substantial professional services for ERP support participation ("ERP Support Services") at Defendants' direction, for Defendants benefit, and with Defendants' full knowledge.

187. The ERP Support Services included

188. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

189. Defendants derived substantial benefits from the professional work IQT performed for ERP Support Services.

190. Defendants have retained these benefits without payment, despite knowing IQT expected to be compensated for its services for the ERP Support Services.

### N. SERVER UPGRADE AND MIGRATION PROJECT

191. On or about May 5, 2025, GI and AMT entered into a Server Upgrade & Migration Project Statement of Work with IQT to migrate and upgrade Virtual Servers from their existing environment to a new on-prem infrastructure provided by IQT.

192. A true and correct copy of the Server Upgrade & Migration Project Statement of Work GI entered into with IQT, hereinafter "GI Server Migration SOW," is attached hereto as **Exhibit 17** and incorporated herein.

193. A true and correct copy of the Server Upgrade & Migration Project Statement of Work AMT entered into with IQT, hereinafter "AMT Server Migration SOW," is attached hereto as **Exhibit 18** and incorporated herein.



194. ████████████████████████████████████████████

████████████████████████████████████████████

195. ████████████████████████████████████████████

████████████████████████████████████████████████

196. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

FILED DATE: 3/13/2026 11:56 AM   2026L002909



FILED DATE: 3/13/2026 11:56 AM    2026L002909



203. ███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████

204. ███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████

205. ███████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████

206.    IQT performed substantial work in accordance with the Server Migration SOWs,

including ████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████

207. ███████████████████████████████████████

█████████████████████████████

208.    GI and AMT failed to provide all information, documentation, access and resources

requested by IQT and required under the Server Migration SOWs, ██████████████████

██████████████████████████████████████████████

████████████████████

209. GI's and AMT's actions and omissions delayed completion of the Server Migration SOW project and caused IQT to perform additional substantial work in connection with the Server Migration SOWs.

210. GI and AMT have failed to make required payment for all amounts due to IQT for work performed in connection with the Server Migration SOWs.

211. In addition, GI and AMT have failed to compensate IQT for ███████████ ███████████ performed at GI and AMT's direction and for GI and AMT's benefit.

212. IQT performed that additional work in good faith and at GI and AMT's request, conferring substantial benefits upon GI and AMT.

213. GI and AMT knowingly accepted and retained those benefits but have refused to compensate IQT for the reasonable value of the services provided.

**O. WINDOWS UPGRADE PROJECT**

214. Beginning in August 2025, GI and AMT engaged IQT to █████████████ ██████████████████████████████████

215. The professional services required to complete the Windows Upgrade Project are outside the scope of the MSA.

216. At GI and AMT's request and direction, IQT submitted proposals for the Windows Upgrade Project, which GI and AMT approved.

217. Thereafter, at GI and AMT's request and direction, IQT submitted statements of work for the Windows Upgrade Project.

218. IQT performed substantial professional services for the Windows Upgrade Project at GI and AMT's direction, for GI and AMT's benefit, and with GI and AMT's full knowledge.

31

219. In connection with the Windows Upgrade Project, and at GI's and AMT's direction and approval, IQT performed substantial professional services, ██████████████████ ███████████████████████████████

220. In addition, IQT expended substantial resources to ████████████████████ ████████████████████

221. GI and AMT derived substantial benefits from the professional work IQT performed for the Windows Upgrade Project.

222. GI and AMT have retained these benefits without payment, despite knowing IQT expected to be compensated for its services for the Windows Upgrade Project.

P. DNC SERVER MIGRATION PROJECT

223. Beginning in or about August 2025, GI engaged IQT to provide technical services for a DNC server migration projection ("DNC Server Migration Project").

224. The professional services required to complete the DNC Server Migration Project are outside the scope of the MSA.

225. At GI's request and direction, IQT submitted proposals for the DNC Server Migration Project.

226. Thereafter, at GI's request and direction, IQT submitted a statement of work for the DNC Server Migration Project.

227. IQT performed substantial professional services for the DNC Server Migration Project at GI's direction, for GI's benefit, and with GI's full knowledge.

228. In connection with the DNC Server Migration Project, and at GI's direction and approval, IQT performed substantial professional services, including but not limited to ██████ ████████████████████████████████████████████████ ████████████████████████████████████

32

229. GI derived substantial benefits from the professional work IQT performed for the DNC Server Migration Project.

230. GI has retained these benefits without payment, despite knowing IQT expected to be compensated for its services for the DNC Server Migration Project.

**Q.   DEFENDANTS' UNAUTHORIZED SERVER MIGRATION AND BREACHES OF THE PARTIES' AGREEMENTS.**

231. ███████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
███████████████████████████████████████████████

232. ███████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████

233. ███████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
███████████████████████████████████ A true and correct copy of the December 16, 2025 letter is attached here as **Exhibit 19.**

234. ███████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
███████████████

235. ███████████████████████████████████████████████████████
████████████████████████████████████████████ A true and correct copy of the December 22, 2025 letter is attached here as **Exhibit 20.**

FILED DATE: 3/13/2026 11:56 AM   2026L002909

236. Defendants' conduct in violation of the MSA, IaaS Agreement and related Contracts includes, but is not limited to, the following:



a. ███████████████████████

b. ███████████████████████

c. ████████████████████████

d. ████████████████████████████

e. ███████████████████████████

f. ██████████████████████████

g. ████████████████████████████

h. ████████████████████████████

i. ████████████████████████████

j. ████████████████████████████

k. ████████████████████████████

l. Failure to pay IQT for amounts owed under the MSA, IaaS Agreement and Contracts.

237. As a result of Defendants' conduct, IQT was required to █████████████ ████████████████████████████████████████ ████████████████ Such work constitutes out-of-scope, customer-caused remediation and is billable at applicable premium rates pursuant to the MSA and IaaS Agreement.

238. Defendants have failed to pay IQT for amounts owed under the Contracts.

239. IQT has incurred substantial costs and attorneys' fees to date and will continue to incur costs and attorneys' fees until the amounts due and owing under the Contracts have been fully satisfied.

240. IQT has performed all of its obligations under the Contracts.

## <u>COUNT I – BREACH OF CONTRACT VS. GI – MSA</u>

241. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

242. IQT entered into an enforceable, binding MSA with GI as evidenced by the MSA attached hereto as **Exhibit 1**.

243. IQT performed all of its obligations under the MSA set forth herein.

244. GI materially breached the MSA by, *inter alia*, failing to make payments as required thereunder and for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ detailed above and including, but not limited to, the following:



a. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

b. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

c. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

d. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

e. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

f. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

g. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

h. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

35

i.

j.

k.

l.  Failure to pay IQT for amounts owed under the MSA.

245.  As a result of GI's conduct, IQT was required to ███████████████

████████████████████████████████████████████████████

███████████  Such work constitutes out-of-scope, customer-caused remediation and is billable at applicable premium rates pursuant to the MSA and IaaS Agreement.

246.  IQT demanded payment for the amounts due and owing under the MSA from GI, but GI has failed and refuses to pay amounts due and owing to IQT under the MSA.

247.  As a result of GI's breaches and failure to make required payments to IQT pursuant to the MSA, IQT has been damaged in an amount to be determined at trial, plus continuing interest, prejudgment interest, late fees, attorneys' fees and costs.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendants GEORGE INDUSTRIES, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the MSA, fees and costs incurred to address and attempt to remediate GI's unauthorized activity and breaches of the MSA, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

## COUNT II – BREACH OF CONTRACT VS. GI, AMT & TTG – IAAS AGREEMENT

248.  IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

36

249. IQT entered into an enforceable, binding IaaS Agreement with GI, AMT and TTG as evidenced by the IaaS Agreement attached hereto as **Exhibit 2**.

250. IQT has performed all of its obligations under the IaaS Agreement set forth herein.

251. GI, AMT and TTG materially breached the IaaS by, *inter alia*, failing to make payments as required thereunder and for ████████████████████████ detailed above and including, but not limited to, the following:



a. ████████████████████████████

b. ████████████████████████████

c. ██████████████████████████████████

d. █████████████████████████████████████████
████████████

e. ████████████████████████████████████████

f. ██████████████████████████████

g. █████████████████████████████████████████
███████

h. █████████████████████████████████████████
████████

i. █████████████████████████████████████████
████████

j. █████████████████████████████████████████
███████

k. █████████████████████████████████████████
█████████████████

l. Failure to pay IQT for amounts owed under the IaaS Agreement.

252. As a result of the conduct by GI, AMT and TTG, IQT was required to ████
█████████████████████████████████████████████

37

██████████████████████████ Such work constitutes out-of-scope, customer-caused remediation and is billable at applicable premium rates pursuant to the MSA and IaaS Agreement.

253.    IQT demanded payment for the amounts due and owing under the IaaS from GI, AMT, and TTG, but GI, AMT and TTG have failed and refuse to pay amounts due and owing to IQT under the IaaS.

254.    As a result of GI, AMT and TTG's breaches and failure to pay IQT for amounts due under the IaaS Agreement, IQT has been damaged in an amount to be determined at trial, plus continuing interest, late fees, attorneys' fees and costs.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendants GEORGE INDUSTRIES, LLC, ALEXANDER MACHINE & TOOL COMPANY, LLC and THE THERMAL GROUP, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the IaaS Agreement, fees and costs incurred to address and attempt to remediate GI's unauthorized activity and breaches of the IaaS Agreement, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

## COUNT III – BREACH OF CONTRACT VS. GI – MICROSOFT SUBLICENSE AGREEMENT

255.    IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

256.    IQT entered into an enforceable, binding Microsoft Sublicense Agreement with GI as evidenced by the Microsoft Sublicense Agreement attached hereto as **Exhibit 3**.

38

257.    IQT has performed all of its obligations under the Microsoft Sublicense Agreement set forth herein.

258.    GI materially breached the Microsoft Sublicense Agreement by, *inter alia*,

███████████████████████████████████████████████████████████████████████

259.    GI materially breached the Microsoft Sublicense Agreement by, *inter alia*, failing to pay IQT for all amounts due to IQT under the contract.

260.    As a result of GI's breaches and failure to make required payment to IQT for amounts due under the Microsoft Sublicense Agreement, IQT has been damaged in an amount to be determined at trial, including but not limited to its attorneys' fees and costs incurred to address and attempt to remediate GI's unauthorized activity and breaches of the Microsoft SPLA Agreement.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendants GEORGE INDUSTRIES, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the Microsoft Sublicense Agreement, fees and costs incurred to address and attempt to remediate GI's unauthorized activity and breaches of the Microsoft Sublicense Agreement, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

## COUNT IV– BREACH OF CONTRACT VS. GI – CROWDSTRIKE SUBLICENSE AGREEMENT

261.    IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

262.    IQT entered into an enforceable, binding CrowdStrike Sublicense Agreement with GI as evidenced by the Microsoft SPLA Agreement attached hereto as **Exhibit 4**.

39

263. IQT has performed all of its obligations under the CrowdStrike Sublicense Agreement set forth herein.

264. GI materially breached the CrowdStrike Sublicense Agreement by, *inter alia*,

███████████████████████████████████████████████████████████

█████████

265. GI materially breached the CrowdStrike Sublicense Agreement by, *inter alia*, failing to pay IQT for all amounts due to IQT under the contract.

266. As a result of GI's breaches, IQT has been damaged in an amount to be determined at trial, including but not limited to its attorney's fees and costs incurred to address and attempt to remediate GI's unauthorized activity and breaches of the CrowdStrike Sublicense Agreement.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendants GEORGE INDUSTRIES, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the CrowdStrike Sublicense Agreement, fees and costs incurred to address and attempt to remediate GI's unauthorized activity and breaches of the CrowdStrike Sublicense Agreement, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

## COUNT V– BREACH OF CONTRACT VS. GI – BAAS AGREEMENT

267. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

268. IQT entered into an enforceable, binding BaaS-GI Agreement with GI as evidenced by the Microsoft SPLA Agreement attached hereto as **Exhibit 5**.

269. IQT performed all of its obligations under the BaaS-GI Agreement set forth herein.

40

270. Following execution of the BaaS Agreements,

271.

272. GI has failed to make required payments under the terms of the BaaS-GI Agreement.

273. GI also failed to make required payments

274. As a result of GI's breaches, IQT has been damaged in an amount to be determined at trial, including but not limited to its attorney's fees and costs incurred to address and attempt to remediate GI's breaches of the BaaS-GI Agreement.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendant GEORGE INDUSTRIES, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the BaaS-GI Agreement, fees and costs incurred to address and attempt to remediate GI's unauthorized activity and breaches of the BaaS-GI Agreement, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

### COUNT VI– BREACH OF CONTRACT VS. AMT – BAAS AGREEMENT

275. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

276.    IQT entered into an enforceable, binding BaaS-AMT Agreement with AMT as evidenced by the BaaS-AMT Agreement attached hereto as **Exhibit 6**.

277.    IQT performed all of its obligations under the BaaS- AMT Agreement set forth herein.

278.    Following execution of the BaaS Agreements, ███████████████████ ████████████████████████████

279.    ███████████████████████████████████████████ ███████████████████████████

280.    AMT has failed to make required payments for ████████████████ ████████████████████████ under the terms of the BaaS-GI Agreement.

281.    AMT also failed to make required payments for ████████████████ ███████████████████████████████████████████████ ███████████████████████████

282.    As a result of AMT's breaches, IQT has been damaged in an amount to be determined at trial, including but not limited to its attorney's fees and costs incurred to address and attempt to remediate AMT's breaches of the BaaS- AMT Agreement.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendant ALEXANDER MACHINE & TOOL COMPANY, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the BaaS- AMT Agreement, fees and costs incurred to address and attempt to remediate GI's unauthorized activity and breaches of the BaaS- AMT Agreement, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

42

## COUNT VII– BREACH OF CONTRACT VS. GI – WAAS AGREEMENT

283.    IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

284.    IQT entered into an enforceable, binding WaaS-GI Agreement with GI as evidenced by the Agreement attached hereto as **Exhibit 7**.

285.    IQT performed all of its obligations under the WaaS-GI Agreement set forth herein.

286.    GI failed to pay for all amounts due to IQT under the terms of the WaaS-GI Agreement.

287.    As a result of GI's breaches and failure to pay IQT as required under the WaaS-GI Agreement, IQT has been damaged in an amount to be determined at trial, including but not limited to its attorney's fees and costs incurred to address and attempt to remediate GI's breaches of the WaaS-GI Agreement.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendant GEORGE INDUSTRIES, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the WaaS-GI Agreement, fees and costs incurred to address and attempt to remediate GI's unauthorized activity and breaches of the WaaS-GI Agreement, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

## COUNT VIII– BREACH OF CONTRACT VS. AMT – WAAS AGREEMENT

288.    IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

289. IQT entered into an enforceable, binding WaaS-AMT Agreement with AMT as evidenced by the Agreement attached hereto as **Exhibit 8**.

290. IQT performed all of its obligations under the WaaS-AMT Agreement set forth herein.

291. AMT failed to pay for all amounts due to IQT under the terms of the WaaS-AMT Agreement.

292. As a result of AMT's breaches and failure to pay IQT as required under the WaaS-AMT Agreement, IQT has been damaged in an amount to be determined at trial, including but not limited to its attorney's fees and costs incurred to address and attempt to remediate AMT's breaches of the WaaS-AMT Agreement.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendant ALEXANDER MACHINE & TOOL COMPANY, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the WaaS-AMT Agreement, fees and costs incurred to address and attempt to remediate AMT's unauthorized activity and breaches of the WaaS-AMT Agreement, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

### COUNT IX– BREACH OF CONTRACT VS. GI & AMT – NETWORK INFRASTRUCTURE UPGRADE SOW

293. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

294. IQT entered into enforceable and binding Network Infrastructure Upgrade SOWs with GI and AMT as evidenced by the SOWs attached hereto as **Exhibit 9** and **Exhibit 10**.

44

FILED DATE: 3/13/2026 11:56 AM 2026L002909

295. IQT performed all of its obligations under the Network Infrastructure Upgrade SOWs as set forth herein.

296. Despite IQT's complete performance, GI and AMT have failed to pay IQT for all amounts due to IQT for work performed as required by the Network Infrastructure Upgrade SOWs.

297. In addition, AMT and GI have failed to make required payments to IQT for monthly maintenance fees █████████████████████████████████████████████████ ███████████

298. As a result of GI's and AMT's breaches and failure to pay IQT as required under the Network Infrastructure Upgrade SOW and for monthly maintenance fees owed, IQT has been damaged in an amount to be determined at trial, including but not limited to its attorney's fees and costs incurred to address and attempt to remediate GI's and AMT's breaches of the Network Infrastructure Upgrade SOWs.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendant GEORGE INDUSTRIES, LLC and ALEXANDER MACHINE & TOOL COMPANY, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the Network Infrastructure Upgrade SOWs, unpaid monthly maintenance fees, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

**COUNT X – BREACH OF CONTRACT VS. GI & AMT – WIRELESS UPGRADE SOWS**

299. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein

300. IQT entered into binding and enforceable Wireless Upgrade SOWs with GI and AMT as evidenced by the SOWs attached hereto as **Exhibit 11** and **Exhibit 12**.

45

301. IQT performed all of its obligations under the Wireless Upgrade SOWs as set forth herein.

302. IQT performed substantial work, ▉▉▉▉▉▉▉▉▉ and invested significant resources for project deployment under the Wireless Upgrade SOWs.

303. However, due to GI's failure to ▉▉▉▉▉▉▉ GI project deployment was prevented.

304. GI's and AMT's actions and omissions caused IQT to perform additional substantial work in connection with the Wireless Upgrade SOWs, as set forth herein, to be billed at its standard billing rates in accordance with the SOWs.

305. Despite IQT's complete performance, GI and AMT have failed to pay IQT for all amounts due to IQT for work performed as required by the Wireless Upgrade SOWs.

306. GI and AMT's failure to pay IQT for work performed under the Wireless Upgrade SOWs is a breach of the Wireless Upgrade SOWs.

307. As a result of GI and AMT's breaches, IQT has been damaged in an amount to be determined at trial, including but not limited to its unpaid fees for professional services rendered, and attorney's fees and costs incurred to address and attempt to remediate GI's breaches of the Wireless Upgrade SOWs.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendants GEORGE INDUSTRIES, LLC and ALEXANDER MACHINE & TOOL COMPANY, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the Wireless Upgrade SOWs, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

46

## COUNT XI – BREACH OF CONTRACT V. GI & AMT – DUO SOWS

308.	IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

309.	IQT entered into binding and enforceable DUO SOWs with GI and AMT as evidenced by the SOWs attached hereto as **Exhibit 13** and **Exhibit 14**.

310.	IQT performed all of its obligations under the DUO SOWs as set forth herein.

311.	IQT performed substantial work and invested significant resources for project deployment under the DUO SOWs.

312.	Despite IQT's complete performance,  GI and AMT have failed to pay IQT for all amounts due to IQT for work performed as required by the DUO SOWs.

313.	GI and AMT's failure to pay IQT for work performed under the DUO SOWs is a breach of the DUO SOWs.

314.	As a result of GI and AMT's breaches, IQT has been damaged in an amount to be determined at trial, including but not limited to its unpaid fees for professional services rendered, attorney's fees and costs incurred to address and attempt to remediate GI's breaches of the DUO SOWs.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendants GEORGE INDUSTRIES, LLC and ALEXANDER MACHINE & TOOL COMPANY, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the DUO SOWs, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

### COUNT XII – BREACH OF CONTRACT V. AMT – MEDIUS SOW

315. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

316. IQT entered into binding and enforceable Medius SOW with AMT as evidenced by the SOW attached hereto as **Exhibit 15**.

317. IQT performed all of its obligations under the Medius SOW as set forth herein.

318. IQT performed substantial work and invested significant resources for project deployment under the Medius SOW.

319. Despite IQT's performance, AMT has failed to pay IQT for all amounts due to IQT for work performed as required by the Medius SOW.

320. AMT's failure to pay IQT for work performed under the Medius SOW is a breach of the Medius SOW.

321. As a result AMT's breaches, IQT has been damaged in an amount to be determined at trial, including but not limited to its unpaid fees for professional services rendered, attorney's fees and costs incurred to address and attempt to remediate AMT's breaches of the Medius SOW.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendant ALEXANDER MACHINE & TOOL COMPANY, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the Medius SOW, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

### COUNT XIII – BREACH OF CONTRACT V. GI – CABLING PROJECT SOW

322. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

48

323. IQT entered into binding and enforceable Cabling Project SOW with GI as evidenced by the SOW attached hereto as **Exhibit 16**.

324. IQT performed all of its obligations under the Cabling Project SOW as set forth herein.

325. IQT performed substantial work and invested significant resources for project deployment under the Cabling Project SOW.

326. Despite IQT's complete performance, GI has failed to pay IQT for all amounts due to IQT for work performed as required by the Cabling Project SOW.

327. GI's failure to pay IQT for work performed under the Cabling Project SOW is a breach of the Cabling Project SOW.

328. As a result of GI's breaches, IQT has been damaged in an amount to be determined at trial, including but not limited to its unpaid fees for professional services rendered, attorney's fees and costs incurred to address and attempt to remediate GI's breaches of the Cabling Project SOW.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendant GEORGE INDUSTRIES, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under Cabling Project, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

## COUNT XIV – UNJUST ENRICHMENT V. GI – CABLING PROJECT

329. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

330. Separate from the work performed under the Cabling Project SOW, IQT provided additional extensive professional services in connection with the GI Cabling Project, including

49

FILED DATE: 3/13/2026 11:56 AM   2026L002909



335. All work IQT performed for the GI Cabling Project was done at GI's direction, for GI's benefit, and with GI's full knowledge and participation.

336. To date, GI has failed and refuses to pay IQT for the professional services IQT performed in connection with the GI Cabling Project

337. IQT performed work in connection with the GI Cabling Project in good faith and at GI's request, conferring substantial benefits upon GI.

338. GI knowingly accepted and retained those benefits but have refused to compensate IQT for the reasonable value of the services provided

339. GI has benefitted from and is unjustly enriched by its refusal to compensate and pay IQT for services IQT performed for the GI Cabling Project.

340. GI has retained these benefits without payment, despite knowing that IQT expected to be compensated for its services for the GI Cabling Project.

341. Equity and good conscience require GI to compensate IQT for the reasonable value of services rendered.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendant GEORGE INDUSTRIES, LLC in an amount to be determined at trial, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

### COUNT XIV – UNJUST ENRICHMENT V. AMT– CABLING PROJECT

342.    IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

343.    IQT provided extensive professional services in connection with the AMT Cabling Project, including ██████████████████████████████████████████ ████████████████████████████████████████████████ ████

344.    In addition, ████████████████████████████████████ ████████████████████████████████████████████████ ██████████.

345.    All work IQT performed for the AMT Cabling Project was done at AMT's direction, for AMT's benefit, and with AMT's full knowledge and participation.

346.    To date, AMT has failed and refuses to pay IQT for the professional services IQT performed in connection with the AMT Cabling Project

347.    IQT performed work in connection with the AMT Cabling Project in good faith and at AMT's request, conferring substantial benefits upon AMT.

348.    AMT knowingly accepted and retained those benefits but have refused to compensate IQT for the reasonable value of the services provided

349.    AMT has benefitted from and is unjustly enriched by its refusal to compensate and pay IQT for services IQT performed for the AMT Cabling Project.

350. AMT has retained these benefits without payment, despite knowing that IQT expected to be compensated for its services for the AMT Cabling Project.

351. Equity and good conscience require Defendants to compensate IQT for the reasonable value of services rendered.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendant ALEXANDER MACHINE & TOOL COMPANY, LLC in an amount to be determined at trial, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

## COUNT XV – UNJUST ENRICHMENT V. GI & AMT– POWER BI WORK

352. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

353. IQT provided professional services and performed substantial work for GI and AMT to ███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████

354. GI and AMT derived substantial benefits from the above services and professional work IQT performed for the Power BI Work.

355. The Power BI Work was done at GI and AMT's direction, for GI and AMT's benefit, and with GI and AMT's full knowledge and participation.

356. To date, GI and AMT have failed and refuse to pay IQT for the professional services IQT performed in connection with the Power BI Work.

52

357. IQT performed the Power BI Work in good faith and at GI and AMT's request, conferring substantial benefits upon GI and AMT.

358. GI and AMT knowingly accepted and retained those benefits but have refused to compensate IQT for the reasonable value of the services provided.

359. GI and AMT have benefitted from and been unjustly enriched by its refusal to compensate and pay IQT for the Power BI Work.

360. GI and AMT have retained these benefits without payment, despite knowing that IQT expected to be compensated for its services for the Power BI Work.

361. Equity and good conscience require GI and AMT to compensate IQT for the reasonable value of services rendered.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendants GEORGE INDUSTRIES, LLC and ALEXANDER MACHINE & TOOL COMPANY, LLC in an amount to be determined at trial, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

## COUNT XVI – UNJUST ENRICHMENT V. GI, AMT & TTG – ERP SUPPORT SERVICES

362. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

363. IQT performed the ERP Support Services as detailed herein at Defendants' direction, for Defendants' benefit, and with Defendants' full knowledge and participation.

364. All Defendants have derived substantial benefits from ERP Support Services and professional work IQT performed.

53

365.    To date, Defendants have failed and refuse to pay IQT for the professional services IQT performed in connection with the ERP Support Services.

366.    IQT performed the ERP Support Services in good faith and at Defendants' request, conferring substantial benefits upon Defendants.

367.    Defendants knowingly accepted and retained those benefits but have refused to compensate IQT for the reasonable value of the services provided.

368.    Defendants have benefitted from and been unjustly enriched by its refusal to compensate and pay IQT for the ERP Support Services.

369.    Defendants have retained these benefits without payment, despite knowing that IQT expected to be compensated for the ERP Support Services.

370.    Equity and good conscience require Defendants compensate IQT for the reasonable value of services rendered for the ERP Support Services.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendants GEORGE INDUSTRIES, LLC, ALEXANDER MACHINE & TOOL COMPANY, LLC and THE THERMAL GROUP, LLC in an amount to be determined at trial, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

## COUNT IX– BREACH OF CONTRACT VS. GI & AMT – SERVER MIGRATION SOW

371.    IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

372.    IQT entered into enforceable and binding Server Migration SOWs with GI and AMT as evidenced by the SOWs attached hereto as **Exhibit 17** and **Exhibit 18**.

54

FILED DATE: 3/13/2026 11:56 AM    2026L002909

373. IQT performed substantial work and invested significant resources for project deployment under the Server Migration SOWs.

374. GI and AMT failed to provide all information, documentation, access and resources requested by IQT and required under the Server Migration SOWs, including, but not limited to,

375. GI's and AMT's actions and omissions delayed completion of the Server Migration SOW project and caused IQT to perform additional substantial work in connection with the Server Migration SOWs, as set forth herein, to be billed at its standard billing rates in accordance with the SOWs.

376. Despite IQT's performance in accordance with the Server Migration SOWs, GI and AMT have failed to pay IQT for all amounts due to IQT for work performed as required by the Server Migration SOWs.

377. GI and AMT's failure to pay IQT for work performed under the Server Migration SOWs is a breach of the Server Migration SOWs

378. As a result of GI's and AMT's breaches and failure to pay IQT as required under the Server Migration SOWs, IQT has been damaged in an amount to be determined at trial, including but not limited to its attorney's fees and costs incurred to address and attempt to remediate GI's and AMT's breaches of the Server Migration SOWs.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendant GEORGE INDUSTRIES, LLC and ALEXANDER MACHINE & TOOL COMPANY, LLC in an amount to be determined at trial, including but not limited to all amounts due and owing under the Server Migration SOWs, unpaid

55

monthly maintenance fees, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

## COUNT XVI – UNJUST ENRICHMENT V. GI & AMT– WINDOWS UPGRADE PROJECT

379. IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

380. IQT performed the Windows Upgrade Project as detailed herein at GI's and AMT's direction, for GI's and AMT's benefit, and with GI's and AMT's full knowledge and participation.

381. GI and AMT derived substantial benefits from Windows Upgrade Project and professional work IQT performed.

382. To date, GI and AMT have failed and refuse to pay IQT for the professional services IQT performed in connection with the Windows Upgrade Project.

383. IQT performed work in connection with the Windows Upgrade Project in good faith and at GI and AMT's request, conferring substantial benefits upon GI and AMT.

384. GI and AMT knowingly accepted and retained those benefits but have refused to compensate IQT for the reasonable value of the services provided

385. GI and AMT benefitted from and have been unjustly enriched by its refusal to compensate and pay IQT for the Windows Upgrade Project.

386. GI and AMT retained these benefits without payment, despite knowing that IQT expected to be compensated for its services for the Windows Upgrade Project.

387. Equity and good conscience require GI and AMT compensate IQT for the reasonable value of services rendered for the Windows Upgrade Project.

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendants GEORGE INDUSTRIES, LLC and

56

ALEXANDER MACHINE & TOOL COMPANY, LLC in an amount to be determined at trial, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate.

### COUNT XVII – UNJUST ENRICHMENT V. GI – DNC SERVER MIGRATION PROJECT

388.    IQT repeats and re-alleges Paragraphs 1-240 of this Complaint as though fully set forth herein.

389.    IQT performed work in connection with DNC Server Migration Project as detailed herein at GI's direction, for GI's benefit, and with GI's full knowledge and participation.

390.    GI derived substantial benefits from DNC Server Migration Project and professional work IQT performed.

391.    To date, GI has failed and refuses to pay IQT for the professional services IQT performed in connection with the DNC Server Migration Project.

392.    IQT performed work in connection with the DNC Server Migration Project in good faith and at GI's request, conferring substantial benefits upon GI.

393.    GI knowingly accepted and retained those benefits but have refused to compensate IQT for the reasonable value of the services provided

394.    GI benefitted from and has been unjustly enriched by its refusal to compensate and pay IQT for the DNC Server Migration Project.

395.    GI retained these benefits without payment, despite knowing that IQT expected to be compensated for its services for the DNC Server Migration Project.

396.    Equity and good conscience require GI compensate IQT for the reasonable value of services rendered for the DNC Server Migration Project.

57

FILED DATE: 3/13/2026 11:56 AM   2026L002909

WHEREFORE, Plaintiff I.Q. TECHNOLOGIES, INC. respectfully requests this Court enter judgment in its favor and against Defendants GEORGE INDUSTRIES, LLC in an amount to be determined at trial, plus accrued interest, accruing interest thereafter, late fees, attorneys' fees and costs, and for such other legal and equitable relief as this Court deems just and appropriate

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, I.Q. TECHNOLOGIES, INC., respectfully requests this Court enter judgment in its favor and against all Defendants in an amount of damages to be proven at trial; plus all costs and fees with respect to this action including, but not limited to, attorneys' fees, costs disbursements, and interest, and such other and further relief that the Court deems just, proper, and equitable.

Dated: March 13, 2026

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By:  /s/ Meagan P. VanderWeele

*Attorneys for Plaintiff I.Q. Technologies, Inc.*

Meagan P. VanderWeele
Walter Deering
**GORDON REES SCULLY MANSUKHANI, LLP**
1 N. Wacker, Suite 1600
Chicago, IL 60606
Telephone: (312) 565-1400
Facsimile: (312) 565-6511
mvanderweele@grsm.com
wdeering@grsm.com
Firm ID: 44373

58

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| I.Q. TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| GEORGE INDUSTRIES, LLC, | ) | |
| ALEXANDER MACHINE & TOOL | ) | |
| COMPANY, LLC, and THE THERMAL | ) | |
| GROUP, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT PURSUANT TO ILLINOIS SUPREME COURT RULE 222(B)**

Under the penalties as provided by law pursuant to Section 1-109 of the Illinois Code of

Civil Procedure, the undersigned certifies that the money damages sought by the Plaintiff, I.Q.

TECHNOLOGIES, INC., exceeds $50,000.00.

/s/ Meagan P. VanderWeele
*Attorney for Plaintiff*
Illinois ARDC No. 6316823
GORDON & REES, LLP
1 N. Wacker, Suite 1600
Chicago, IL 60606
Telephone: (312) 565-1400
mvanderweele@grsm.com
Firm ID: 44373

**Civil Action Cover Sheet - Case Initiation**      **(12/01/24) CCL 0520**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

I.Q. Technologies, Inc.

v.

George Industries, LLC; Alexander Machine & Tool Company, LLC; The Thermal Group, LLC

No. _____

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ☒ Yes ☐ No

(FILE STAMP)

### PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By: Meagan P. VanderWeele / Atty. No. 6316823

   (Attorney)                   (Pro Se)

### COMMERCIAL LITIGATION
CASE TYPES:
- ☒ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action
  (Please specify below.**)
- ☐ 075 Other Commercial Litigation
  (Please specify below.**)
- ☐ 076 Retaliatory Discharge

### OTHER ACTIONS
CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** _____

_____

Primary Email: mvanderweele@grsm.com

Secondary Email: wdeering@grsm.com

Tertiary Email: _____

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address: _____

## Mariyana T. Spyropoulos, Clerk of the Circuit Court of Cook County, Illinois

Date: 4/3/2026

CIRCUIT COURT OF COOK COUNTY
LAW DIV. RM. 801,  DALEY CENTER.
CHICAGO IL-60602

I.Q. Technologies, Inc.

-

VanderWeeleMeagan Pearl
mvanderweele@grsm.com

NOTICE OF ZOOM CASE MANAGEMENT
CASE: 2026L002909

I.Q. Technologies, Inc.-vs-The Thermal Group, LLC,Alexander Machine & Tool Compa

This cause is scheduled for initial case management via Zoom
before Judge,  Esrig, Jerry A  On Thursday  May  07  2026 at 09:30 AM

** DO NOT APPEAR IN PERSON **

To access Zoom by video go to https://zoom.us/join then
enter the access code and password listed below.
ZOOM ACCESS CODE: 950 5322 1634   PASSWORD: 335113
To access Zoom by phone, call 312-626-6799 and then enter
the access code and password listed above.
For questions email: Law.Calscc@cookcountyil.gov
You cannot access Zoom until your scheduled hearing date.
All attorneys of record and self-represented litigants are
required to appear via Zoom and advise the court as to the status of the case.